Very well. Mr. Larson, we'll hear from you first. Thank you. May it please the court, your honors. My name is Jacob Larson. I'm the Assistant Attorney General with the Iowa Attorney General's Office representing the defendants slash appellants in this case. And agriculture is a very important industry in the state of Iowa. Many would argue our most the state of Iowa passed the Iowa Ag Fraud Statute 2012, codified as Section 717A, Section 3A. And plaintiffs have challenged that as unconstitutional under the First Amendment and 14th Amendment. Despite the descriptions to the contrary, the statute doesn't necessarily do anything that controversial or remarkable, protecting private property from trespass and interference as a longstanding legitimate exercise of the state's police power. Notwithstanding that, the district court found it officially unconstitutional under the First Amendment. The state argues that the district court erred for three primary reasons. First, that the conduct and speech prohibited by the Ag Fraud Statute is not protected under the First Amendment. Number two, that the Ag Fraud Statute is a content neutral statute and it is also not viewpoint based. And finally, that the Ag Fraud Statute satisfies intermediate scrutiny, which is the level of scrutiny that attaches to this statute. So with respect to the first argument that the speech falls outside the protections of the First Amendment, what this statute does is prohibit under subsection A, trespass, essentially getting access to an agricultural production facility, a private property by false pretenses. These false pretenses, despite discussion in the district court opinion and plaintiff's arguments, require the false speech to be material. The Wilson case that the state identified in its reply brief, it interprets false pretenses as similar to the elements of fraudulent misrepresentation, which requires a knowing, material misrepresentation. So the false speech that would get someone access or under subsection B to get employment has to be a material sort of lie. Why do you say that as to part 1B? That doesn't use the term false pretense. Is that subsection just refers to making a false statement as part of an application for employment? What is it in the text there that leads us to a materiality requirement? The state would argue that it's unclear that there are many other criminal statutes out there that don't require some kind of false representation to be material. In addition to that, the state would be perfectly comfortable with a limiting construction of requiring that the false speech be material as a requirement for running afoul of the statute. I understand the language. When you say the state would be perfectly comfortable with it, is that the right standard for a federal court to use in deciding how to construe a state statute, or do we need something more authoritative than comfort? Sorry, maybe I used the wrong language there. What the state would argue is that we would accept a limiting instruction that courts do in constitutionality of a statute to read a statute as being unconstitutional, and courts sometimes read out certain types of conduct or speech in order to preserve the constitutionality of a statute. In this instance, a construction requiring that the false statements made under subsection B be material would be what the state would argue would continue to uphold the unconstitutionality and read out some of the potential unconstitutional or problematic applications that the district court would identify. Counsel, wouldn't this court have to find that that interpretation was reasonably susceptible in order to make that state in construction? Yes, your honor, I would agree. I'd like to back up just a second if I could. How does the fact that this is a facial challenge affect our analysis? Under a facial challenge as this, the issue under Salerno and the Phelps-Roker case from the Eighth Circuit, the standard is, are there any set of circumstances under which the statute could be constitutionally applied? If so, the next step would then be most likely an overbreadth challenge, and the district court didn't reach that element of kind of the threshold analyses under a facial constitutional challenge. Counsel, since this is a First Amendment case, is that the right standard or is it just that there's a substantial number of applications under which it would be unconstitutional? The state's reading under Phelps-Roker was, is that you try and identify if there's any legitimate applications or legitimate sweep of the statute that would apply, and then if there are, the next step would then be performing some kind of an overbreadth analysis to identify if the infringement on constitutionally protected speech and unconstitutional applications is substantially overbroad and therefore would be unconstitutional under the overbreadth analysis. But I think that's important to note when reading through the district court's opinion and plaintiff's arguments. A lot of the hypotheticals that are raised would apply more to an as-applied challenge versus a facial challenge where there are certainly a number of legitimate applications of the statute that the plaintiffs has even acknowledged and the district court agreed with. And referring back to the trespass harm here, protecting of property rights is obviously one of the most fundamental rights that is out there with respect to property, and excluding unwanted entrants goes right along with that. And what's happening... Counsel, under, but under Alvarez, how does, when we're dealing with subsection A, first of all, how does a violation of that subsection result in anything more than nominal damages? Because it doesn't require any intent to do harm. Yes, your honor. What the statement would argue here is that looking at the nominal damage aspect of the amount of recovery for some kind of damage is not necessarily the same standard when a trespass or an infringement of property has occurred. And as the district court on remand in the Wasden in the Ninth Circuit case kind of identified, you can have a violation of a right with a trespass where somebody has infringed on your right to exclude anyone while also still not resulting in any compensable harm necessarily, the nominal damage aspect. It means that the recovery for the damages may be minimal, but the right that was infringed is still important and should be protected. And so I think that's the dichotomy there between separating out what you get for damages versus the infringement of the right itself. You know, where someone commits a fraud to steal money and obtains $1, the amount of fraud is not very much. It's $1, but the infringement on the person's right to be free from having their money taken by deception or false speech is still, should be protected in a reason why that speech would fall aside the First Amendment. Mr. Luxton, we're called upon to interpret Alvarez here, right? Correct, your honor. It's application to the statute, yes. Should we be following the plurality opinion or the concurring opinion? Well, there's, one of the rules out there is that when you have a concurrence and in a plurality decision, you rely upon the decision that reached, that upheld the lower court ruling of the statute on the narrowest of grounds. And that would be Justice Breyers in this case. And he did take a slightly different take on what kind of false speech qualifies as protected and what doesn't. A lot of the briefing has focused on the legally cognizable harm and material gain from Justice Kennedy's opinion. It's also what the Ninth Circuit relied upon in their decision as well in Wasden. And so the state believed that under either standard, the statute would be constitutional and the speech would fall outside the protections of the First Amendment. But given the Ninth Circuit's on the Justice Kennedy opinion and most of the other district courts that have addressed the issue focused on that opinion, the substantive majority of the briefing from the state focused on that analysis of legally cognizable harms and material gains obtained by the false speech. Counselor, I have a question regarding the standard here. Since we have to look at whether the pretenses or statements were false or not, why is this not a content-based regulation? The state would argue it's primarily addressed at conduct that is facilitated by false speech. The false speech is integral to the criminal act that's occurring. You wouldn't have a trespass in this case without the false speech. Because that is what's defeating the normal route of stopping someone from trespassing is identifying to them that you don't want them to come on. And here someone is using false speech to get around that. And so the false speech is integral to the criminal conduct that's occurring. And therefore, the state would argue that that is places it in a content-neutral realm. In addition to content-neutral, one of the arguments that was raised by plaintiffs that the state wants to address briefly is the location of this being agricultural production facilities, that that makes it somehow content-based. However, the location of the facilities being protected is not what would make a statute content-based. The McClellan case dealt with buffer restrictions around abortion clinics. Other cases, a lot of cases dealing particularly with medical facilities and abortion facilities are not content-based simply because they affect that particular industry. Referring back to... So, Mr. Larson, while you're talking about the facilities, I did have a separate question on that. Sure. You mentioned that trespass is a primary objective of the statute or preventing trespass. The plaintiffs seem to argue that the definition of agricultural production facility goes beyond private property and would bring in certain public properties. They list a bunch of hypothetical examples like 4-H events and county fairs and Future Farmers of America exhibitions and so forth. What do you have to say about that, whether the scope of the definition would go beyond private property and whether that would create a separate constitutional problem where you don't have a trespass? Again, setting aside the potential issues of that being more of an applied challenge consideration, the state agrees that the statute may be read and the definitions of agricultural production facility may cover some areas that are open to the public. Whether or not someone actually would be able to use false speech to get into something that's open to the public may not necessarily occur because getting into a 4-H center fair, you may not have to make any kind of representation at all. It's not clear that you would be able to engage in the kind of speech you needed to run afoul of the statute in some of these public places. In addition, under subsection B, even in a public place, you could still have an employee get hired with an intent to commit an unauthorized act. The concern would be more 1A on that issue, I think. Yes. You're saying maybe there's no need to obtain access by false pretenses if it's a public event or public property. It wouldn't really apply in the first place. Correct. I see. One other question about the construction here. You mentioned earlier possibly construing the 1B to require materiality. Of course, we're a federal court construing a state statute. Has there been any talk in this case of certifying any question to the Supreme Court of Iowa? Did that come up at all in the district court? No, Your Honor, it did not. I don't recall, I don't believe the briefings. Has the Attorney General issued any kind of authoritative interpretation here that would give us some comfort that the county attorneys are bound and will not prosecute for non-material statements? Is there anything you can help us with on that? Nothing formal in terms of an AG opinion has been issued. Obviously, our office works with the county attorneys and has a Prosecuting Attorneys Training Council in our office that works with all 99 county attorneys. The county attorneys have independent authority, don't they? They would, Your Honor, yes. You think we could just declare that 1B is limited to material statements and make that binding on the state? The state does, Your Honor. There are other cases where a statute is read to only apply to a type of, I can't remember the case, I'm sorry, where it's read to apply only to speech that is unprotected, so it excludes any speech that might be protected and county prosecutors are then left to their devices when bringing challenges to identify under a particular statute if the speech that they are going to try and address is covered. So any time there would be a question of whether the statute would apply, the county attorney would have to hopefully do their due diligence and find if there's been any limiting opinions on what kind of speech is covered and what kind of elements you would have to prove. Well, I understand that process. I was just wondering about the authority of a federal court to do that, but I understand your position. Thank you. Thank you, Your Honor. I see my time is down to a little over four minutes. I'd like to reserve the remaining for rebuttal if that's okay. Seeing no other questions right away, you may do so. Thank you for your argument. Thank you, Your Honor. Mr. Strugar, we'll hear from you. Thank you, Your Honor. May it please the court, Matthew Strugar for the Plaintiff Appellees. Since at least the days of Upton Sinclair, undercover investigations in animal agriculture have been vital to food safety, worker safety, animal welfare, and environmental protection. The state of Iowa passed this law in response to high-profile investigations at major animal agricultural facilities. The law's history, context, and functioning show that its purpose and effect is to prevent them from happening again. The law's operation lets this court resolve it, in this case, in a straightforward, uncomplicated way. First, the First Amendment applies because the statute criminalizes speech, not conduct, and prohibit lies that do not fall within the narrow historical exceptions to the First Amendment that the Supreme Court recognized in the United States versus Alvarez. Second, the law achieves its sentence by making a content-based distinction on speech, which triggers heightened scrutiny. And third, the law fails the scrutiny because the state's real prohibiting animal exposés in animal agriculture is not a compelling or important interest, and moreover, even if it were, the law is not sufficiently tailored to those interests, and the state has provided no evidence of that. On the first question about the application of the First Amendment... Hold on. Just a moment. Madam Clerk, could you please make sure the clock is on? Thank you. Thank you, Your Honor. This law targets speech, statements and pretenses. Statements and pretenses are pure speech. The state argues, sort of, some inconsistent ways that it reaches only conduct and not speech, that it reaches... Even if it reaches speech, it only reaches speech on private property not open to the public, and even if it doesn't do that, it's still only prohibits false speech that's beyond the protection. I think the first two can be disposed of pretty easily. The conduct not speech argument, on its face, it governs what people can or cannot say. It's a direct regulation of pure speech. That same argument of the speech not conduct was raised by defendants in the Ninth Circuit in the Lawson case, the Eleventh Circuit in the Western Watersheds Project case, the District Court here, the District Court in the Utah Herbert case, and the District Court in the Kelly case, the Kansas case. Counsel, I'd like to dig a little bit deeper into that point if I could. Why isn't Iowa just criminalizing a course of conduct initiated or carried out by means of language? This court in Young v. Ricketts said that that was permissible, as did the U.S. Supreme Court in the Rumsfeld decision. Sure. It's not conduct because it regulates actual speech. In Rumsfeld, the court said, maybe this conduct is facilitated by speech. It's giving access to different people, different recruiters based on their policy of discrimination or non-discrimination. Really, all they were doing was giving access. Here, we actually have words. Words trigger the statute. The state relies on- Counsel, let me ask about that. The statute also talks about pretenses. Are pretenses always words? Pretenses aren't always words. I think omissions here. I think there are pretenses that happen by omissions, which is another problem with I think the breadth of the statute. If somebody could apply without revealing an undercover investigatory purpose or simply just acting as if they are a regular worker and they could still be prosecuted by the mere act of an omission. Let me ask about that. An assailant recently gained access to a judge's family by false pretenses, specifically by wearing a FedEx uniform. Could a state outlaw accessing someone's home by false pretenses under the First Amendment under your theory? Your Honor, I think they could criminalize accessing someone's home under false pretenses to commit an assault, certainly. It's the lack of intent that distinguishes the statute in your view. It's the lack of intent of the type of harm that's going to happen. For instance, plenty of people lie to get access to homes all the time. Somebody might say I enjoy your cooking to get a dinner invitation or any kind of puffery or compliment to get some kind of access, consent to enter a home. There would still be a problem with the breadth of the statute if it doesn't require some kind of harm that Alvarez recognized as traditionally outside of the First Amendment. Well, do you think trespass is a legally cognizable harm? No. For a number of reasons. Trespass alone is not a legally cognizable harm. Why not? Go ahead. I'm sorry. Sure. Because trespass without more doesn't deprive the owner of any type of control over their own land. Why is it actionable in a court of law, then, if it's not a legally cognizable harm? Because the harm there is nominal. There are nominal damages for strict trespass that cause absolutely no damage. Nominal is what it is. The name means a name only. It doesn't harm anyone. We find support for this in Alvarez. We find support for this in Wasden, in both the district courts here and in Utah and in Kansas. The concern I have with that rationale is that you can't get nominal damages, as I understand it, unless you've established a legal injury. In fact, Judge Gritzner cited a definition of nominal damages from Black's Law Dictionary, a trifling sum awarded when legal injury is suffered. If there's a legal injury, query why that's not a legally cognizable harm, even if the damages are nominal. I think we find support for it in Alvarez, Your Honor, where the court said, basically, we're going to look to what we have traditionally looked to as the subset of lies that are outside the First Amendment, so perjury, defamation, fraud, and the like. There is no historical exception outside the First Amendment for lies made to cause a nominal trespass-type harm. In Alvarez itself, the court recognized that there are actual injuries that flow from stealing valor from people who have put their lives on the line for this country, whose efforts are diminished by liars who falsely claim that these are happening. Those types of damages may be legally cognizable in some sense in some civil tort. Emotional distress damages, all kinds of emotional injuries are recognized by the common law and are actionable. The question is whether or not you can criminalize them, and whether or not they fall within the traditional historical exceptions for the First Amendment. There, the court says, no, these psychic-type harms aren't enough. There has to be something more, and it tries to draw a thread through the court's historical jurisprudence on defamation, perjury, and the like to say, in these kinds of cases, you have something that the court calls an umbrella term of legally cognizable harm. But it still says you have to look to the history and the tradition of the First Amendment to determine whether or not it's been traditionally accepted. I think if the court was going to say that any lie made to gain access is enough, I think the court would have written the opinion in a much different way. When I read Alvarez, I see the and that's not a broad statement for false statements of fact, and it's not even sort of, and within there, there are subcategories that apply, but even those categories are narrowly drawn, often require some type of physical or monetary harm to the deceived party, and mere access without more isn't that. And there's also support for this in the Fuline case out of the Fourth Circuit, the Desnick case out of the Seventh Circuit. In each of those cases, they said, you sort of, kind of, Judge Posner talked about in Desnick, there's sort of an assumption of the risk. Counsel, let's suppose that instead of Iowa criminalizing access to ag production facilities by false pretenses, that they instead criminalized accessing their computer system or surveillance cameras through false pretenses. Would that violate the First Amendment? I think that would be a tougher case. I think that is some kind of, that you have real sort in that situation that would make the law much stronger. You know, I think there's still sort of the question of why go after speech, why go after false pretenses, and why not just have a prohibition on sort of an unauthorized accessing that applies generally, I think. But under my hypothetical, they obtained access to their computers or surveillance cameras through false pretenses. Sure. Wouldn't the same privacy interest be at stake for physical entry? Physical entry to an animal agricultural facility, not necessarily, Your Honor, I think. And we're not saying the state couldn't, you know, increase its trespass laws in a way that would allow access to property that doesn't have specific authorization from the property owner. That law doesn't target speech. It doesn't target misrepresentation itself. It would probably include within it misrepresentations. But it would apply across the board. It wouldn't sort of single out a certain industry and certain speakers for either protection or prosecution. And it would not have the kind of, it wouldn't sort of focus on speech in a content-based way. It wouldn't single out, you know, lies, speech. Let me ask you a question about that. Is there any authority for the proposition that the veracity of speech is equivalent to its content? Yes. That's in Alvarez itself. You know, sort of Alvarez talks about there are historical content-based exclusions from the First Amendment. So Alvarez says there are even a distinction between a threat and a not threat or between obscenity and non-obscenity. It's still a content-based distinction. You still need to look at the speech to make that determination. But it said there are certain types of content-based distinctions that are traditionally outside the First Amendment. And it didn't find that all statements as a general matter are outside. It found that sort of within the category of false statements. There are subsets. There are perjury, defamation, fraud, and the like that are permissible content-based distinctions. So that's the authority on it. Mr. Schruber, are you urging us to apply the plurality opinion or the conferring opinion? I think the court can avoid the question, for one. I think the question of whether or not to apply the plurality or the majority is triggered by, is basically comes down to what level of scrutiny to apply. And so I think the court can avoid the answer unless this court thinks that the law would fail strict scrutiny but pass intermediate scrutiny. And that's the only situation in which the court would actually have to make the determination. But the court is inclined to decide it. We believe the majority decision is appropriate. Of course. I apologize. Let me ask you this, though. Isn't the employment provision, which I think is 1B, isn't that pretty specifically upheld in the plurality opinion? No, I don't think so. Well, one of the examples is offers of employment, false statements in connection with offers of employment. It may be dicta, but Supreme Court dicta is pretty significant to us. I think you can look to that paragraph and to the paragraph in which that statement falls to sort of provide the context. It seems clear that Justice Kennedy is talking about an applicant who exaggerates his qualifications to get a job. In that situation, there is a kind of unjust enrichment or some kind of fraud in such that, you know, the employer believes he's bargaining for something that he doesn't get. You know, the other language in the paragraph talks about the warning, sorry, warns of the dangers of expanding the types of speech that are outside the First Amendment, warning against a rule that allowed the government to create a list of subjects about which false speech is punishable and what's not, even going as far as deciding Orwell's 1984. So, I think, you know, Justice Kennedy is trying to imply that the frauds and other resulting in the type of unjust enrichment where somebody exaggerates their employment would fall outside the First Amendment. Here, there's undisputed evidence. Counsel, isn't the issue here really whether the term unauthorized acts is overly broad and that it differs from the statute that was upheld in the Ninth Circuit, for example? Well, I do think that's, if the court is inclined to sort of follow Wosden, I do think that that is the main question. You know, in Wosden, there was this, the court sort of read, caused some type of injury, caused an economic injury, and it sort of read it together with its restitution provision to determine sort of what its scope is. The court said with the restitution provision, you know, we read out reputational or other types of injuries. Those are the types of injuries, if any, our clients intend to commit are, you know, sort of publication of truthful information. But this statute sweeps far broader than, you know, an act that's not authorized is very different than an act that causes injury. An employer could refuse to authorize a number of things. He could refuse to authorize talking about unionization, which is a protected right. He could refuse to authorize taking a picture of a blocked fire door. He could refuse to authorize even talking to members of the other sect. These aren't necessarily things that cause the employer harm. They're simply not authorized, and it greatly increases the breadth of the statute. You know, if I may, Your Honor, you're talking about defamation and trespassing. You know, the reason the state passed this law is because they couldn't get at these investigations any other way. These are defamatory because the videos and the exposes that the plaintiffs put out are truthful. It's usually not a trespass because there's consent to enter, and even if there is, there's no harm, so the damage would be nominal. There's no fraud. So the state saw, okay. Is the consent secured by misrepresentation? You say there's consent to enter. Is it valid consent if it's obtained by false pretenses? Yeah. Well, the state hasn't pointed to any authority that says that it's not. The Desnick decision in the Seventh Circuit, you know, the Lawson decision in the Ninth Circuit, all the district court opinions upholding similar laws have all said, basically, it's an assumption of the risk when you invite somebody into your house under, you know, again, go back to the hypothetical of somebody who, you know, invitation to a... If that's your best example, that's not really a verifiable fact. You called it puffery yourself. I don't know if that's really a good analogy to a verifiable fact about employment. Well, here the undisputed evidence is that the plaintiffs don't sort of lie about who they are or what they do. They will tell a lie in the sense that they will say that they are connected to an animal rights organization or something like that, but it doesn't go to anything that sort of deprives the owner of his right or that vitiates consent in any way that's supported by the case law that's out there, and the state hasn't pointed to any of the rest of it. May I ask you about Section 1B? We talked about materiality. Do you see any reason why we shouldn't construe 1B to require a material false statement? Yes, Your Honor. For one, you know, I think that there's some interesting... I think that there's a lot of concessions basically in the state's multiple requests for narrowing constructions. As to materiality, you know, the state went and passed, after this law was enjoined, went and passed another similar law that is currently being litigated in the district court right now, and that law explicitly includes materiality. Now, if the court were to sort of uphold both, there'd be a question as to why the materiality requirement was explicit in the one but not the other, which I think would lead to... under statutory construction, canons would lead to the assumption that materiality shouldn't have been... you know, that the legislature's intent wasn't to include materiality in the other one. Second, the Supreme Court's put some strict limitations on what federal courts can do to sort of go in and tinker with statutes. The state also asked the court to say that union salting, the practice of sending in employees under false pretenses as union organizers, which is a federally protected right under the labor law, to also sort of carve that out. You know, the Supreme Court in the IoD versus Planned Parenthood of, I forget, New Hampshire case said, you know, courts can strike out words. They can go in and strike out words that cause constitutional problems, but they can't go in and sort of tinker with the statute and rewrite it without any evidence that the state itself had an intention to do so. And as to the salting argument, Your Honor, you know, there's multiple people outside of animal rights investigators who use these type of tactics. There's undercover investigative journalists. There's civil rights testers in employment who send people of different races to test to see what kind of responses they get. There's KETAM relators, who the empirical evidence shows more than 50 percent of them are private investigators who obtain employment by some type of false representation to recover money for the government. Even law enforcement typically lies to gain access. So these aren't, you know, this isn't simply animal rights investigators or agricultural facilities. Because this is a content-based restriction on speech that doesn't survive either intermediate or strict scrutiny, we ask that the court affirm. Very well. Thank you for your argument. Mr. Larson, we'll hear from you in rebuttal. Thank you, Your Honor. Just briefly, two points. Touching on what Counsel Struger mentioned on the Wasink case from the Ninth Circuit under the employment section, I think the plaintiffs have didn't articulate the court's analysis in a wholly accurate fashion because I think the court made a very distinct decision on the employment provision in Wastin, where they identified that the employment by misrepresentation satisfied the language in Alvarez with an intent to harm, you know, qualified as the legally cognizable injury or material gain. And then it very distinctly moved on to another argument of, is the statute viewpoint-based? And in that analysis, that's where the court discussed reputational harms and what kind of damages would be recoverable for a violation. And so I don't read, the state doesn't read the reputation damage analysis in the Ninth Circuit opinion as part of the analysis of whether or not the speech used to obtain the job falls outside the protection of the First Amendment or not. And neither did the district court in Idaho on remand when plaintiffs made the exact same argument and the district court rejected it, saying that they are distinct issues. The final issue the state would want to raise is the issue of high-value lies. Plaintiffs briefed it in their case and the district court to some extent discussed the kind of value that these lies bring to the table in this case. And the state would contend that placing a value judgment on the lies in this case presents a potential framework for future First Amendment analyses that could be, lead to some subjective analyses because the value that the plaintiffs and the district court assess to these is not the lies of the false speech themselves. It's the value that some future statements made by these organizations or others that are the benefit to society. And the cases that the district court looked at, the Gertz case and Sullivan, the, you know, deal with defamation and libel and the discussion about the value of false print or spoken that you don't want people to self-censor. And that's very different than using false speech to, as a means to an end, to somehow acquire information or access to something you would otherwise be prohibited from. And so the state just wanted to make that point as well, that we think the district court erred in allowing that to inform its decision in finding the statute facially unconstitutional. And as earlier as the state believes the speech addressed in the Ag Fraud statute falls outside the protections of the First Amendment, the state believes the district court erred in finding it facially unconstitutional as well as erring in finding that it was content-based and did not satisfy either intermediate or strict scrutiny and would respectfully request that the circuit court reverse the statute. If you have no other questions, thank you. Mr. Larson. Yes, sir. What does the challenge statute here prevent that the 2019 statute would not also prevent? Well, there's an argument here about potentially deception. The state respectfully disagrees with plaintiff's counsel that false pretenses may include omissions, whereas deception possibly could. So there's certain elements in the speech that's used that might be slightly different. And that's being teased out, I think, in the litigation at the district court level as well, as well as a potential issue. I see my time's expired. May I briefly finish my answer, your honor? Go ahead. Okay, thank you. And although the state may not necessarily agree, the district court in its motion to dismiss ruling in the second statute found that it applies to not only people who obtain employment, but those who continue to be so employed. And so there's different categories of people that may qualify as someone who could run afoul of the statute in the second statute that wouldn't run afoul of the first statute. All right. Thank you for your time.